******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE PROBATE APPEAL OF JAMES BARBERA III
## (AC 48128)

Elgo, Seeley and DiPentima, Js.

*Syllabus*

The plaintiff appealed from the Superior Court's judgment dismissing his appeal from a decree of the Probate Court denying his motion for payment of attorney's fees and petition to surcharge. He claimed that he incurred attorney's fees for the benefit of a trust and its beneficiaries in pursuing the defendant's removal as trustee of that trust and that the defendant should have been surcharged for attorney's fees that the defendant incurred for his defense against the action to remove him as trustee and paid out of the trust's assets. The plaintiff claimed, inter alia, that the court improperly concluded that he had not appealed from a decree of the Probate Court approving the final accounting of a successor trustee, which had been issued on the same day as the decree denying his motion for payment and his petition to surcharge. *Held*:

The Superior Court properly concluded that it lacked subject matter jurisdiction to entertain the plaintiff's motion for payment of attorney's fees that he incurred for the benefit of the trust and its beneficiaries in securing the defendant's removal as trustee because, in the absence of express statutory authorization, the court lacked jurisdiction to entertain such an equitable claim, and the statutes that the plaintiff claimed authorized his claim (§§ 45a-98 (a) (6), 45a-110 (c), and 45a-175 (g)) were inapplicable to the facts of the case.

The Superior Court's finding that the plaintiff did not appeal from the final accounting decree was not clearly erroneous in light of the evidence and pleadings in the record because there was no indication in any of the pleadings that the plaintiff filed with the court between the commencement of his probate appeal and the first day of trial that the propriety of the final accounting decree was at issue, as the plaintiff maintained that his appeal pertained solely to the propriety of the Probate Court's decision to deny his motion for payment and his petition to surcharge, and the court and the defendant were entitled to rely on those pleadings.

The Superior Court's finding that the final accounting filed by the successor trustee incorporated expenditures itemized in a prior accounting filed by the defendant was not clearly erroneous, as it was substantiated by the parties' exhibits, which demonstrated, inter alia, that the successor trustee adopted the account on file into his final accounting.

The Superior Court properly concluded that the plaintiff's petition to surcharge the defendant for attorney's fees that were paid to the defendant's counsel with trust assets was time barred pursuant to statute (§ 45a-186

(b)), as the plaintiff failed to appeal from the final accounting decree, in which the Probate Court approved the final accounting incorporating those expenditures, within thirty days.

Argued September 18—officially released December 16, 2025

*Procedural History*

Appeal from the decree of the Probate Court for the district of Greenwich denying the plaintiff's motion for payment and his petition to surcharge, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Robert L. Genuario*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed*.

*Robert D. Russo*, with whom were *Liam S. Burke* and, on the brief, *Amanda T. Heffernan*, for the appellant (plaintiff).

*Gerard N. Saggese III*, with whom was *Juliette G. Taylor*, for the appellee (defendant Ronald A. Young).

*Opinion*

ELGO, J. The plaintiff, James Barbera III, appeals from the judgment of the Superior Court dismissing his appeal from a November 29, 2021 decree of the Probate Court for the district of Greenwich. On appeal, the plaintiff claims that the Superior Court improperly concluded that (1) it lacked subject matter jurisdiction to entertain his motion for payment of attorney's fees that he incurred in an effort to remove the defendant Ronald A. Young as trustee of the Evelynann L. Barbera Revocable Trust (trust),[1] (2) the plaintiff had not appealed from

---

[1] Michael Barbera, Robert Barbera, Mary Bellantoni, Antoinette Dombrowski, Patricia Enright, James Fulton, Bradley Jacobs, Maureen Jernigan, Katherine Kelley, Rebecca Kelley, Shawn Kelley, Lawrence Mannix, Richard Margenot, Gerard Saggese, and Annette Shanley also were named as defendants in the plaintiff's appeal to the Superior Court but have not appeared or participated in this appeal. Also named as a defendant was the successor trustee of the trust, Nicholas Bellantoni, who has appeared in this appeal but has not filed an appellate brief. For clarity, we refer to Ronald A. Young as the defendant in this opinion.

the decree of the Probate Court approving the final accounting of the successor trustee, Nicholas Bellantoni (successor trustee), (3) the final accounting of the successor trustee incorporated expenditures itemized in a prior accounting filed by the defendant one year earlier, and (4) the plaintiff's petition to surcharge was barred by the statute of limitations contained in General Statutes § 45a-186 (b).[2] We affirm the judgment of the Superior Court.

The following facts, as set forth in the Superior Court's October 2, 2024 memorandum of decision, are relevant to this appeal. The plaintiff is the nephew of Evelynann Barbera (testator) and a beneficiary of the trust. The defendant is the great nephew of the testator and also a beneficiary of the trust. "On or about March 15, 2002, [the testator] entered into a revocable trust agreement, pursuant to which she and [the defendant] were cotrustees of the trust . . . . The trust provided that, upon her death, [it] would become irrevocable. The [testator] passed away on June 13, 2014, and [the defendant] became the sole trustee at that time. Thus, [the defendant] was cotrustee from 2002 to June 13,

---

[2] In his appellate brief, the plaintiff also claims that the Superior Court improperly relied "upon the findings of the Probate Court in rendering its decision" and improperly made "findings without consideration of the Probate Court's determination." The plaintiff has not provided citation to any legal authority for those claims and his analysis thereof consists of a single paragraph of abstract assertion. We, therefore, decline to review those inadequately briefed claims. See, e.g., *Cohen* v. *Rossi*, 346 Conn. 642, 689, 295 A.3d 75 (2023) ("[Our appellate courts] are not required to review issues that have been improperly presented . . . through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.)); *Russell* v. *Russell*, 91 Conn. App. 619, 635, 882 A.2d 98 (parties must analyze relationship between facts of case and applicable law), cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005).

2014, and sole trustee from 2014 until his removal by the Probate Court pursuant to [a] decree of January, 2019. [The defendant] has a financial background and, since the early 2000s, worked as a financial advisor regarding 'strategies for wealth creation.' In 2008, [the defendant] became more involved in the management of the trust assets because the [testator] began to show diminishing capacity due to the natural aging process. During [the defendant's] tenure as trustee, the largest asset of the trust was a commercial property in the downtown commercial shopping district of Rye, New York.

"The plaintiff also has a financial background in the accounting field, though he is not a certified public accountant. He acquired his interest in the trust when his father passed away, pursuant to terms of the trust, which provided for a per stirpes distribution of the interest of deceased beneficiaries. . . .

"[The defendant] filed an accounting for the trust, dated March 23, 2018, with the Probate Court for the period of March 15, 2002, to April 30, 2015. In July of 2018, the plaintiff filed an amended supplemental objection to that accounting filed by [the defendant]. . . . As a part of those objections, he petitioned the Probate Court to remove [the defendant] as trustee (July, 2018 objections). In the July, 2018 objections, the plaintiff alleged various breaches of fiduciary duties by [the defendant] and sought, inter alia, an order of the Probate Court removing and replacing him as trustee and the issuance of a surcharge. . . . [T]he objections raised by the plaintiff in his July, 2018 objections include an inability or refusal to completely and accurately account for $111,302.26 in trust assets, which the plaintiff alleged . . . represented loans made by [the defendant] to himself from trust assets. The objections also included claims that [the defendant] breached his fiduciary duty by investing trust assets in businesses in

which he had an interest, and which investments were not appropriately documented or accounted for. The plaintiff also objected to investments in private companies, including an investment in a company referred to as the 'SeeSmart' investment, which this court finds resulted in a total loss to the trust of its funds invested in SeeSmart. The objections included other transactions by [the defendant] in which he loaned trust funds to himself, made nontraditional investments and paid himself trustee fees in excess of what was appropriate.

"[The defendant] acquired his interest in the trust by purchasing the interest of other beneficiaries in 2016, including that of his cousin, [Robert] Barbera, and that of his grandmother. Prior to the acquisition of his interest in the trust . . . the defendant . . . had no direct interest as a beneficiary in the trust. There is no evidence to indicate that these transactions were other than arm's length, mutually agreeable financial transactions between [the defendant] and the two beneficiaries of the trust from which he acquired his interest. As a result of these transactions, [the defendant's] interest in the trust is approximately 55 percent [of] the trust assets; the plaintiff's interest is approximately 7.25 percent.

"Following a hearing on the accounting for the period of March 15, 2002, through April 30, 2015, and the July, 2018 objections, the Probate Court issued a decree dated January 9, 2019 (January, 2019 decree). In the January, 2019 decree, the Probate Court (1) removed [the defendant] as trustee based on 'an appearance of impropriety'; (2) reduced [the defendant's] trustee fee from $273,666.55 to $156,000 pursuant to the principles articulated in *Hayward* v. *Plant*, 98 Conn. 374 [119 A. 341] (1923); (3) ordered that [the defendant] amend his accounting to reflect the reduction in his trustee's fee; and (4) appointed [the] successor trustee . . . . Despite removing [the defendant] as trustee for an

appearance of impropriety and reducing the amount of his fees, the Probate Court did not find that [the defendant] engaged in financial malfeasance, fraud or bad faith, or that he breached any of his fiduciary duties. In addition, the [Probate] Court expressly declined to surcharge [the defendant]. The plaintiff's request to surcharge [the defendant] in [the] July, 2018 objections did not include a request to surcharge [the defendant] for the legal fees that are the subject of this case because those fees had not yet been specified in the March 23, 2018 accounting, which was the subject of the July, 2018 objections. No appeal was taken from the January, 2019 decree.

"On August 16, 2019, [the defendant] filed an interim account for the period of May 1, 2015, through January 9, 2019 (August, 2019 accounting). The August, 2019 accounting specifies for the first time that $407,327.53 in legal fees were paid from the trust to [the defendant's] counsel from May 22, 2015, through August 31, 2018. These fees were not reflected in the previous accounting filed by [the defendant] that covered the period from March 15, 2002, through April 30, 2015. On September 10, 2019, [the defendant] filed an amended first and final account for the period of March 15, 2002, through April 30, 2015 . . . as ordered in the January, 2019 decree. In a decree dated September 24, 2019 (September, 2019 decree), the Probate Court held that the August, 2019 accounting would be 'kept for informational purposes only,' and that, 'at this time, the [Probate] Court is satisfied that [the defendant] has fulfilled what was ordered of him pursuant to the [January, 2019 decree].' No appeal was taken from the September, 2019 decree.

"On November 25, 2020, the plaintiff filed a motion for payment, requesting reimbursement for [$242,287] in attorney's fees he claimed that he incurred for the

benefit of the trust and his fellow beneficiaries in pursuing [the defendant's] removal as trustee. Also, on November 25, 2020, the plaintiff filed the petition to surcharge [the defendant] for $344,074.08 in attorney's fees [that the defendant] incurred for his defense against the action to remove him as trustee and paid out of trust assets, which fees were incurred between May 1, 2015, and January 9, 2019, as reflected in the August, 2019 accounting. On April 26, 2021, [the defendant] filed an opposition to both of the plaintiff's motions. In a decree dated November 29, 2021, the Probate Court denied the plaintiff's motion for payment and the petition to surcharge (November, 2021 decree). The November, 2021 decree provides that the plaintiff did achieve a benefit to the trust and its beneficiaries in reducing [the defendant's] trustee fees by $117,666.55, but the benefit was offset by the fact that an extraordinary amount of time and expense were incurred by the trust in defending against claims that were denied. The November, 2021 decree clarified that [the defendant] was removed as trustee based on the [Probate] Court's concern over an appearance of impropriety and a lack of professionalism as a fiduciary. However, the [Probate] Court also noted that, notwithstanding these actions, [it] did not find financial malfeasance, fraud, or bad faith [on the part of the defendant].

"In a separate decree dated November 29, 2021, the Probate Court approved the final account[ing] filed by the successor trustee . . . (final accounting decree)." In that decree, the Probate Court stated: "After due hearing, the COURT FINDS that . . . [n]otice was given in accordance with the order(s) of notice previously given. The [successor trustee] has sent a copy of the final account to all parties and attorneys of record. After having examined the final account, together with all supporting documents, the court FURTHER FINDS THAT . . . [o]bjections were raised and

considered. WHEREFORE, it is ORDERED AND DECREED that . . . [t]he final account is approved. The rest, residue and remainder, if any, of the estate or trust is to be distributed, transferred and paid by the [successor trustee] in accordance with the findings of the court above. The [successor trustee] shall submit an affidavit of closing to the court." The successor trustee complied with that directive and filed an affidavit of closing with the Probate Court in March, 2022.

On December 28, 2021, the plaintiff commenced a probate appeal in the Superior Court,[3] claiming that the Probate Court had "erroneously reached certain factual conclusions" in denying his motion for payment and his request to surcharge. The defendant filed an answer and six special defenses, in which he alleged, inter alia, that the plaintiff's claims were time barred by the statute of limitations contained in § 45a-186 (b) and otherwise were barred by the doctrines of collateral estoppel and res judicata. In his reply to those special defenses, the plaintiff summarily denied the allegations contained therein.

On April 10, 2023, the defendant filed a motion to dismiss the plaintiff's appeal for lack of subject matter jurisdiction, claiming that the appeal was moot because the plaintiff had not appealed from the final accounting decree.[4] The defendant further alleged that the appeal

_____

[3] "[P]robate appeals are not civil actions. They are not commenced by the service of process . . . . Probate appeals are, rather, properly commenced by filing the complaint with the Superior Court." (Citation omitted; internal quotation marks omitted.) *Burnell* v. *Chorches*, 173 Conn. App. 788, 796, 164 A.3d 806 (2017).

[4] On April 10, 2023, the defendant also filed a motion for summary judgment on collateral estoppel and res judicata grounds. In response, the plaintiff argued, inter alia, that motions for summary judgment "are procedurally improper in the context of a probate appeal . . . ." In its September 15, 2023 order on that motion, the court first noted that "[t]he crux of the plaintiff's argument is that summary judgment is not permitted in an appeal from probate. There is a split of authority in the Superior Court on this issue as noted by the respective parties. This split of authority is well framed . . . in the recent decision of *Watson* v. *Trustees of the Eleanor Watson*

was time barred, as it was not filed within the thirty day limitation period of § 45a-186 (b). In support of that motion, the defendant filed a sworn affidavit dated April 4, 2023, in which he averred that, "[b]eginning in 2015, [the] [p]laintiff began a series of filings in the Greenwich Probate Court, which were heavily litigated." The defendant then stated that "[a]ttached to this [a]ffidavit are exhibits which contain true and correct copies of certain filings" and "certain [d]ecrees entered by the Probate Court . . . ." Those exhibits included copies of the January, 2019 decree, the September, 2019 decree, the November, 2021 decree, and the final accounting decree. In addition, the defendant filed a memorandum of law in support of his motion to dismiss, in which he conceded that the plaintiff's "appeal of the November, 2021 decree was technically commenced within the thirty day appeal period proscribed in . . . § 45a-186."

In his June 26, 2023 objection to the defendant's motion to dismiss, the plaintiff averred that "the instant appeal does not seek to overturn or otherwise challenge decrees from 2019"; that "the subject of the instant probate appeal is a November, 2021 decree"; and that "[t]he [November], 2021 decree, which has been appealed by the plaintiff, was a decree denying the plaintiff's motion for payment, which sought reimbursement from the trust of legal fees incurred by the plaintiff in connection with the underlying probate dispute and the defendant's actions as trustee, and motion for surcharge, which sought to have . . . legal fees paid by the defendant out of trust assets reclassified as distributions to the defendant rather than trust expenses."

The court heard argument on the defendant's motion to dismiss on July 10, 2023. In its September 15, 2023

*Irrevocable Trust,* [Docket No. CV-21-6050864-S, 2023 WL 5543151, *2 (Conn. Super. August 21, 2023)]." The court then expressly adopted the reasoning of that decision and concluded that it lacked subject matter jurisdiction over the defendant's motion for summary judgment. The propriety of that determination is not at issue in this appeal.

order, the court denied the motion, stating in relevant part: "The court heard argument on the record related to this motion to dismiss . . . . At that time, [the parties] were provided the opportunity to fully state their arguments on the motion. . . . As the [defendant] concedes in [his] argument and filings, the appeal is timely [as] to the [November, 2021 decree] and was filed within thirty (30) days, on December 28, 2021. Also, as the defendant concedes, this action is not an attempt to resurrect claims of prior orders of the Probate Court that were not timely appealed. As such, pursuant to . . . § 45a-186 (b), the court finds that the appeal [of the November, 2021 decree] is timely and that the court has jurisdiction over this appeal . . . ."

On April 26, 2024, the parties filed a stipulation with the court titled "The Parties' Joint Proposed Findings of Fact." That stipulation contained thirty paragraphs and specified, among other things, that "[n]o appeal was taken of the January, 2019 decree," that "[n]o appeal was taken of the September, 2019 decree," and that "[n]o appeal was taken of the final accounting decree."

A two day trial was held in the spring of 2024, at which the plaintiff and the defendant testified, and twenty-three exhibits were admitted into evidence. The parties thereafter submitted posttrial briefs.

In its October 2, 2024 memorandum of decision, the court emphasized that, although the Probate Court removed the defendant as trustee in the January, 2019 decree, the Probate Court did not find, in either the January, 2019 decree or the November, 2021 decree, that the defendant "engaged in financial malfeasance, fraud or bad faith, or that he breached any of his fiduciary duties" to the trust. The Superior Court then concluded that it lacked subject matter jurisdiction to entertain the plaintiff's motion for payment of attorney's fees

that he incurred while pursuing the defendant's removal as trustee. The court also found that the plaintiff had not appealed the final accounting decree, in which the Probate Court approved the final accounting filed by the successor trustee. Lastly, the court concluded that the plaintiff's petition to surcharge the defendant for expenses paid out of trust assets in defending the motion to remove him as trustee was barred by both the applicable statute of limitations and the doctrine of collateral estoppel. Accordingly, the court dismissed the appeal, and this appeal followed.

As a preliminary matter, we note that "[a]n appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court." (Citations omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 263–64, 550 A.2d 1069 (1988); see also *In re Probate Appeal of Buckingham*, 197 Conn. App. 373, 374, 231 A.3d 1261 (2020) (Superior Court "assumes the status of a statutory Probate Court of limited jurisdiction" when hearing probate appeals). Moreover, in cases in which no record was made of the proceedings before the Probate Court, "the Superior Court [is] required to undertake a de novo review of the Probate Court's decision."[5] (Internal quotation marks omitted.) *Salce* v. *Cardello*, 348 Conn. 90, 104, 301 A.3d 1031 (2023); see also *Kerin* v. *Stangle*, supra, 264 (function of Superior Court in appeals from order or decree of Probate Court "is to take jurisdiction of the order or decree appealed from and to try that issue de novo").

---

[5] It is undisputed that no record was made of the Probate Court proceedings in the present case.

## I

We first consider the plaintiff's contention that the Superior Court improperly concluded that it lacked subject matter jurisdiction to entertain his motion for payment of attorney's fees that he incurred for the benefit of the trust and its beneficiaries in securing the defendant's removal as trustee.[6] That claim is unavailing.

[6] We are mindful that our Supreme Court has distinguished a court's subject matter jurisdiction from its statutory authority to act. See, e.g., *Hepburn* v. *Brill*, 348 Conn. 827, 838, 312 A.3d 1 (2024); *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999). At the same time, "the distinction between challenges to the trial court's subject matter jurisdiction and challenges to the exercise of its statutory authority is not always clear"; *In re Matthew F.*, 297 Conn. 673, 702, 4 A.3d 248 (2010) (*Rogers*, C. J., concurring); and often "has proven illusory in practice." *In re Jose B.*, 303 Conn. 569, 580, 34 A.3d 975 (2012); see also *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 692–93 n.11, 217 A.3d 953 (2019) (distinction between trial court's subject matter jurisdiction and its statutory authority "has caused ongoing confusion in our courts"); *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 162, 740 A.2d 796 (1999) (noting "the recurrent difficulty of distinguishing" between challenges to subject matter jurisdiction and statutory authority).

That difficulty is compounded in the context of probate appeals, as the jurisdiction of such courts is circumscribed and constrained by statute. See, e.g., *In re Joshua S.*, 260 Conn. 182, 214, 796 A.2d 1141 (2002) ("It is well established that courts of probate are statutory tribunals that have no common-law jurisdiction. . . . Accordingly, [courts of probate] can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . [A] court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute." (Citations omitted; internal quotation marks omitted.)). Irrespective of the distinction between subject matter jurisdiction and statutory authority, our Supreme Court has continued to use jurisdictional nomenclature when discussing the authority of a Probate Court to adjudicate a plaintiff's claim. See, e.g., *Solon* v. *Slater*, 345 Conn. 794, 828, 287 A.3d 574 (2023); *Hynes* v. *Jones*, 331 Conn. 385, 392, 204 A.3d 1128 (2019); *In re Henry P. B.-P.*, 327 Conn. 312, 324, 173 A.3d 928 (2017); *In re Michaela Lee R.*, 253 Conn. 570, 583, 756 A.2d 214 (2000); cf. *Rutherford* v. *Slagle*, 352 Conn. 27, 45, 334 A.3d 988 (2025) (noting that "the legislature has expanded the jurisdiction of the probate courts" through statutory enactment); *Potter* v.

As our Supreme Court has explained, "[c]ourts of probate are statutory tribunals that have no common-law jurisdiction. . . . Accordingly, [they] can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . [A] court [that] exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Hynes* v. *Jones*, 331 Conn. 385, 392, 204 A.3d 1128 (2019). The issue in this case is whether our General Statutes grant the Probate Court authority to exercise jurisdiction over the plaintiff's motion for payment of $242,287 in attorney's fees that he incurred in pursuing the defendant's removal as trustee. That issue presents a question of statutory interpretation, over which our review is plenary. See id.

"In matters of statutory interpretation, we are guided by General Statutes § 1-2z, which directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Health Body World Supply, Inc.* v. *Wang*, 353 Conn. 296, 313, 342 A.3d 987 (2025).

A

In resolving the interpretive question before us, we do not write on a blank slate but are guided by the precedent of our Supreme Court. See, e.g., *New*

*Alcorn*, 140 Conn. 96, 100, 99 A.2d 97 (1953) ("[i]t is, of course, elementary that courts of probate are strictly statutory tribunals").

*England Road, Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013). In *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 416–17, 279 A.2d 726 (1971), the plaintiff beneficiaries sought to recover "damages for expenses incurred in benefiting a trust" and attorney's fees specifically. In that case, the efforts of the plaintiffs "resulted in substantial benefits to the estate in that approximately $85,000 of increased value was realized for the estate." Id., 419. Because their actions benefited the trust, the plaintiffs alleged that "equitable principles apply; that those principles permit the recovery of their expenses; [and] that the recovery can be from the trust fund benefited . . . ." Id., 420. Our Supreme Court agreed, stating: "The principle of reimbursing a party for expenses which he has incurred in benefiting a trust fund of which he is a beneficiary is . . . recognized in Connecticut. . . . It thus seems to be evident that the rule of equity, and of trusts, through which the plaintiffs seek to recover, does indeed exist. It is, in fact, widely recognized. . . . To allow recovery in a situation such as that in the present case is equitable, and to deny recovery in such a situation would be unjust. We find, therefore, that the action brought by the plaintiffs is equitable in nature and one for which a remedy clearly lies." (Citations omitted.) Id., 421–23.

Our Supreme Court then turned its attention to the question of precisely which court in this state "had jurisdiction over this matter." Id., 427. The court first noted that the plaintiffs' claim was "an overall claim for services incurred in benefiting" the trust and that the "expenses claimed were the aggregate of all of the expenses incurred in benefiting the trust . . . ." Id., 427–28. The court then explained that the right to recover such expenses originated not in the General Statutes, "but rather, in general equitable doctrines . . . ." Id., 428. For that reason, our Supreme Court

held that "the Probate Court, and the Superior Court sitting in review as a court of probate, cannot order the payment of such expenses." Id. It continued: "The court of probate has no common-law jurisdiction. . . . It may only act as authorized by statute. . . . The Superior Court, sitting in review of the Probate Court, may not exercise powers beyond those of the Probate Court." (Citations omitted.) Id.

In addition, our Supreme Court observed that "[a] court of probate is unable to award damages. . . . It would, therefore, be inappropriate to allow a court to entertain an action in which it is without the power to grant the relief requested." (Citation omitted.) Id., 430. The court emphasized that "the Probate Court lacks essential powers necessary to handle independent equitable actions, clearly supporting the position that it may not assume jurisdiction in such cases. . . . [W]e should not imbue a court with jurisdiction where its own limitations prevent it from going forward." Id. The court thus concluded that it was "clear that . . . the Probate Court has no jurisdiction over a matter of this sort. The claimant, however . . . is not without a remedy. His recourse is through courts of ordinary jurisdiction. . . . The only appropriate remedy would . . . be in a court of general jurisdiction . . . . We, therefore, hold that the Probate Court may not entertain an equitable claim against a trust fund in an independent action. The only manner in which to test the validity of an equitable claim which has been disallowed by a trustee is through independent action in an appropriate court of general jurisdiction." (Citations omitted.) Id., 431–33.

In his November 25, 2020 motion for payment filed with the Probate Court, which was admitted into evidence as an exhibit before the Superior Court, the plaintiff relied on *Palmer* for the proposition that, where services have been rendered by a beneficiary for the benefit of the trust as a whole, the attorney's fees

expended by that beneficiary are recoverable from the trust. See id., 423–24. In so doing, the plaintiff overlooked the fact that our Supreme Court in *Palmer* held that a court of general jurisdiction was the only "appropriate court in which to bring [an action to recover attorney's fees incurred to the benefit of a trust], and it [could] properly assum[e] jurisdiction over the subject matter."[7] Id., 433. Bound by that precedent, we conclude that, absent express statutory authorization, the Probate Court, and the Superior Court when acting on a probate appeal, lacks jurisdiction to entertain an equitable claim for attorney's fees incurred by a beneficiary for the benefit of a trust.

B

In its memorandum of decision, the court also noted that the plaintiff had not identified "any statute [that] provides the Probate Court with jurisdiction to order a trustee to reimburse a party who has expended funds arguably to the benefit [of] the trust." The record substantiates that determination. The plaintiff did not cite a single statute in the November 25, 2020 motion for payment that he filed with the Probate Court. He likewise cited no statute in support of his claim for reimbursement of attorney's fees in his operative complaint in his probate appeal, at trial, or in his July 17, 2024 posttrial brief filed with the Superior Court.

On appeal to this court, the plaintiff cites three statutes that, he claims, authorize the Probate Court to entertain his motion for payment of attorney's fees.[8] The

---

[7] Although the Superior Court in the present case expressly relied on *Palmer* in its October 2, 2024 memorandum of decision, the plaintiff has provided no citation to, or discussion of, that precedent in his appellate brief.

[8] We recognize that the plaintiff did not raise the applicability of those statutes before either the Probate Court or the Superior Court. Because it implicates the court's subject matter jurisdiction over the plaintiff's motion for payment, we nevertheless consider that contention. See, e.g., *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 506, 43 A.3d 69 (2012) ("[b]ecause the defendants' claim implicates the trial court's subject matter jurisdiction,

first, General Statutes § 45a-110 (c), has no application here. By its plain language, § 45a-110 (c) pertains to "the fees and expenses provided for by [General Statutes §§] 45a-106a, 45a-108a and 45a-109"—which include filing fees, registration fees, accounting fees, recording fees, and copying fees—and authorizes the court to "order the fiduciary of an estate to reimburse a party for any such fees and expenses if the court determines that reimbursement is equitable." General Statutes § 45a-110 (c). Attorney's fees are not within the ambit of § 45a-110 (c), and the plaintiff has provided no authority indicating otherwise.

The plaintiff also cites General Statutes §§ 45a-98 (a) (6) and 45a-175 (g). Those statutes both pertain to the Probate Court's authority over accountings by fiduciaries. The plaintiff correctly notes that § 45a-98 (a) (6) authorizes the Probate Court, "to the extent provided for in [§] 45a-175, [to] call executors, administrators, [and] trustees . . . to account concerning the estates entrusted to their charge . . . ." Section 45a-175, in turn, confers jurisdiction on the Probate Court over the interim and final accountings of fiduciaries. On appeal, the plaintiff relies specifically on § 45a-175 (g), which provides in relevant part: "Upon the allowance of [an accounting], the court shall determine the rights of the fiduciaries or the agent under a power of attorney rendering the account and of the parties interested in the account, *including the relief authorized under [General Statutes §] 1-350p*, subject to appeal as in other cases. . . ." (Emphasis added.)

Section 1-350p is part of the Connecticut Uniform Power of Attorney Act (act), General Statutes § 1-350 et seq.[9] It provides in relevant part that "[a]n agent

we conclude that it is reviewable even though the defendants have raised it for the first time on appeal").

[9] "A power of attorney is an instrument in writing whereby one person, as principal, appoints another as his agent and confers the authority to perform certain specified acts or kinds of acts on behalf of the principal."

that violates [the act] is liable to the principal or the principal's successors in interest for the amount required to . . . [r]eimburse the principal or the principal's successors in interest for the reasonable attorney's fees and costs paid on the agent's behalf." General Statutes § 1-350p. The question before this court is whether, considered together, §§ 1-350p and 45a-175 (g) authorized the Probate Court to grant the plaintiff's November 25, 2020 motion for payment of $242,287 in attorney's fees that he incurred for the benefit of the trust and his fellow beneficiaries in securing the defendant's removal as trustee.

In resolving that question of statutory interpretation, we note that the term "agent," as used in § 1-350p, is specifically defined by the act as "a person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney in fact, or otherwise. Agent includes an original agent, coagent, successor agent and a person to which an agent's authority is delegated." General Statutes § 1-350a (1). By its plain language, that term does not include trustees generally. The act also defines the term " '[p]rincipal' " as "an individual who grants authority to an agent in a power of attorney." General Statutes § 1-350a (9). By its plain language, that term does not include testators unless they have granted authority to an agent through a power of attorney.

In the present case, the plaintiff has not argued in his appellate brief or at oral argument before this court that the testator granted the defendant authority to act on her behalf pursuant to a power of attorney. No power of attorney document was presented into evidence, and the Superior Court made no finding to that effect. In

---

*In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 881 (3d Cir. 1984). A power of attorney constitutes a "formal contract of agency" and creates a principal-agent relationship for which principles of agency law apply. *Long* v. *Schull*, 184 Conn. 252, 256, 439 A.2d 975 (1981).

the absence of such a determination, we cannot say that the testator qualified as a principal or that the defendant qualified as an agent under § 1-350p.

In addition, we reiterate that § 1-350p provides in relevant part that, when a violation of the act is established, an agent may be liable to reimburse "the principal or the principal's successors in interest for the reasonable attorney's fees and costs *paid on the agent's behalf*." (Emphasis added.) Here, the plaintiff's claim is that he incurred significant attorney's fees for the benefit of the trust and his fellow beneficiaries, as the court expressly found in its memorandum of decision. Moreover, as the parties stipulated in their April 26, 2024 joint proposed findings of fact, those attorney's fees were paid on behalf of the trust and its beneficiaries in an effort to remove the defendant as trustee. That stipulation and the corresponding factual findings of the Superior Court leave no doubt that the plaintiff's attorney's fees were not incurred for the benefit of the defendant but, rather, for the benefit of the trust and its beneficiaries. For those reasons, the relief provided in § 1-350p is unavailable to the plaintiff under the particular facts of this case.

Even if we were to conclude otherwise, the plaintiff still could not prevail. As we have noted, §§ 45a-98 (a) (6) and 45a-175 confer on the Probate Court the authority to act on the accountings of a fiduciary and provide relief related thereto. A necessary prerequisite to that relief is "the allowance of any such account" filed by a fiduciary. General Statutes § 45a-175 (g). Fatal to the plaintiff's claim is the fact that his motion for payment of attorney's fees was not premised upon any accounting filed by the defendant.[10] Rather, his motion for payment was predicated on his June, 2018 petition to have

[10] In the April 26, 2024 stipulation filed with the court, the plaintiff acknowledged that the Probate Court issued the January, 2019 decree and the September, 2019 decree regarding accountings filed by the defendant and that he did not take an appeal of either decree. The Probate Court also issued the

the defendant removed as trustee and his ability to recover attorney's fees incurred on behalf of the trust pursuant to *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 421–23, which recognized that an equitable claim for attorney's fees exists when a beneficiary incurs such fees.[11] Because his motion for payment was predicated on his efforts to remove the defendant as trustee and his entitlement to equitable relief pursuant to *Palmer*, rather than statutory relief related to an accounting before the Probate Court, we conclude that §§ 45a-98 (a) (6) and 45a-175 (g) are inapplicable on the facts of the present case. A court of general jurisdiction, and not the Probate Court, possesses jurisdiction over such equitable claims. See id., 431–33. Accordingly, the Superior Court properly concluded that it lacked subject matter jurisdiction in this probate appeal to entertain the plaintiff's motion for payment of attorney's fees that he incurred for the benefit of the trust and its beneficiaries in securing the defendant's removal as trustee.

## II

The plaintiff also claims that the Superior Court erroneously concluded that he did not appeal from the final accounting decree. We disagree.

final accounting decree on November 29, 2021, in which it approved the final accounting filed by the successor trustee. As discussed more fully in part II of this opinion, the Superior Court found that no appeal was taken from the final accounting decree.

[11] In his November 25, 2020 motion for payment, the plaintiff quoted *Palmer* v. *Hartford National Bank & Trust Co.*, supra, 160 Conn. 423, for the proposition that "where services have been rendered by a beneficiary, and if [they were] for the benefit of the trust estate as a whole, costs and fees will be allowed out of the trust fund" and that, "[w]here the services protect a common fund, it is liable for costs and expenses, including counsel fees incurred." (Internal quotation marks omitted.) The plaintiff then argued: "In June of 2018, the [plaintiff] petitioned [the Probate Court] to remove [the defendant] after discovering evidence of [his] long-standing financial malfeasance and misuse of the trust's assets. The [plaintiff's] efforts on behalf of the trust to have [the defendant] removed by [the Probate Court] succeeded on January 9, 2019 . . . . The reimbursement of [$242,287 in

At the outset, we note the applicable standard of review. "In appeals in which the [Superior Court] has ruled on a probate appeal de novo, we treat our scope of review as we would with any other Superior Court proceeding. . . . When the court has made factual findings, we defer to those findings unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Moore* v. *Bryant-Mitchell*, 234 Conn. App. 378, 387–88, 344 A.3d 222 (2025). In determining whether a finding of fact is clearly erroneous, "every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Slack* v. *Greene*, 294 Conn. 418, 427, 984 A.2d 734 (2009).

On November 29, 2021, the Probate Court issued two separate decrees. In the first, the November, 2021 decree, the Probate Court denied the plaintiff's November 25, 2020 motion for payment of attorney's fees and his November 25, 2020 petition to surcharge the defendant for $344,074.08 in attorney's fees that were paid with trust assets as part of his defense against the action to remove him as trustee. In the second decree issued on November 29, 2021, the final accounting decree, the Probate Court approved the final accounting filed by the successor trustee on August 28, 2020. It is undisputed that the plaintiff filed a timely appeal of the November, 2021 decree. The question is whether the Superior Court's finding that he did not appeal the final accounting decree is clearly erroneous.

attorney's fees] is fair and equitable because if the [plaintiff] had not successfully pursued the removal of [the defendant] as trustee, [he] would have continued to misuse funds . . . ." (Citation omitted.)

To resolve that question, the pleadings of the parties require close examination. See, e.g., *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436, 845 A.2d 382 (2004) ("[a] finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record" (internal quotation marks omitted)). The record indicates that the plaintiff commenced this probate appeal in the Superior Court on December 28, 2021. In his complaint, the plaintiff stated that he was appealing a singular decree, "dated November 29, 2021," and, thereafter, identified only one decree of the Probate Court—the November, 2021 decree. The plaintiff averred that, in that decree, the Probate Court had denied his motion for payment and his petition to surcharge. The plaintiff then alleged, in his "reason for appeal,"[12] that the Probate Court had "erroneously reached certain factual conclusions" in that decree. Notably, the plaintiff's complaint contains no reference to the final accounting decree or the substance thereof. Moreover, although the plaintiff attached a copy of the November, 2021 decree as an exhibit to that complaint, as required by § 45a-186 (c),[13] he did not include a copy of the final accounting decree in that pleading.[14]

The record also indicates that, on April 10, 2023, the defendant filed a motion to dismiss the plaintiff's probate appeal. In that motion, the defendant specifically alleged that the appeal was moot because, although the plaintiff had appealed the November, 2021 decree, he had "failed to appeal a separate decree by the Probate Court approving the final accounting." In support of that motion, the defendant filed a sworn

---

[12] General Statutes § 45a-186 (c) provides in relevant part: "The complaint shall state the reasons for the appeal. . . ."

[13] General Statutes § 45a-186 (c) provides in relevant part: "A copy of the order, denial or decree appealed from shall be attached to the complaint."

[14] Although the plaintiff did not attach a copy of the final accounting decree to his complaint, he did append a copy of the final page of that decree, which consisted solely of the certificate of mailing to interested parties.

affidavit dated April 4, 2023, to which he appended "true and correct copies" of the January, 2019 decree, the September, 2019 decree, the November, 2021 decree, and the final accounting decree.

The plaintiff filed an objection to the defendant's motion to dismiss on June 26, 2023. In that pleading, the plaintiff averred that "the subject of the instant probate appeal is a November, 2021 decree" and that "[t]he [November], 2021 decree, which has been appealed by the plaintiff, was a decree denying the plaintiff's motion for payment, which sought reimbursement from the trust of legal fees incurred by the plaintiff in connection with the underlying probate dispute and the defendant's actions as trustee, and motion for surcharge, which sought to have . . . legal fees paid by the defendant out of trust assets reclassified as distributions to the defendant rather than trust expenses." After hearing argument from the parties, the court denied the motion to dismiss, stating in relevant part: "[T]he appeal is timely [as] to the [November, 2021 decree] and was filed within thirty (30) days, on December 28, 2021. Also, as the defendant concedes, this action is not an attempt to resurrect claims of prior orders of the Probate Court that were not timely appealed."

The plaintiff filed an amended complaint on September 20, 2023, that is identical to the original complaint in all respects material to this appeal.[15] As he did in his

---

[15] In his amended complaint, the plaintiff began by stating that he was appealing a singular decree, "dated November 29, 2021," and thereafter identified only one decree of the Probate Court—the November, 2021 decree. In describing that decree, the plaintiff first noted that he had "sought an order from the Probate Court to surcharge [the defendant] for expenditures made from the trust funds . . . and for reimbursement for expenditures the plaintiff made for the benefit of the trust and his fellow beneficiaries." The plaintiff then alleged that, in the decree that was the subject of this appeal, the Probate Court denied both his motion for payment and his petition to surcharge. He further alleged that the court made erroneous determinations in that decree.

original complaint, the plaintiff attached a copy of the November, 2021 decree to his amended complaint in accordance with § 45a-186 (c).[16]

Prior to trial, the defendant filed four motions in limine, including one to preclude certain evidence that he claimed was barred by the doctrines of collateral estoppel and res judicata. The plaintiff filed a written objection to that motion on April 25, 2024. In that pleading, the plaintiff again averred that he "is appealing the November 29, 2021 decree, which denied his . . . petition to surcharge and motion for payment."

On April 26, 2024, the parties filed a stipulation with the court titled "The Parties' Joint Proposed Findings of Fact." Paragraph 28 of that stipulation provides: "No appeal was taken of the final accounting decree."

A two day trial was held on April 30 and May 2, 2024. On the first day of trial, the court heard argument from the parties on the four motions in limine filed by the defendant. At the outset, the court noted that "there was a final accounting . . . submitted, [it] was approved" and "there was no appeal from the [final accounting] decree." In response, the plaintiff's counsel stated: "Correct, Your Honor. Yes. I agree with that. No appeal being taken from the final [accounting] decree . . . ." The court then noted that, in the November, 2021 decree, the Probate Court had denied the plaintiff's motion for payment and petition to surcharge and stated, "That's the decision you're appealing?" The plaintiff's counsel replied, "That's correct, Your Honor." After the defendant's counsel clarified that the Probate Court had issued two separate decrees on November 29, 2021, the following colloquy ensued:

---

[16] As with his original complaint, the plaintiff did not attach a copy of the final accounting decree to his amended complaint but did append a copy of the final page of that decree, which consisted solely of the certificate of mailing to interested parties.

"The Court: . . . [Y]ou're appealing both those decrees in this action?

"[The Plaintiff's Counsel]: Your Honor, we appealed the—I'm not sure which one is the first November 29, but we appealed the—

"The Court: The failure to surcharge—

"[The Plaintiff's Counsel]: Yes. . . .

"The Court: So, you did not appeal the final account [ing decree]?

"[The Plaintiff's Counsel]: Correct, Your Honor."

After the court heard argument from the defendant's counsel on the motion in limine before it, another colloquy followed regarding precisely which decree had been appealed by the plaintiff:

"[The Plaintiff's Counsel]: . . . The appeal is of the November 29, 2021 decree. . . .

"The Court: Only one of the decrees?

"[The Defendant's Counsel]: Right, Your Honor.

"The Court: That's what you told me before.

"[The Plaintiff's Counsel]: Correct. It's only one of the decrees, correct.

"The Court: The decree about the surcharge and the—

"[The Plaintiff's Counsel]: Correct. Yes. There was no appeal of the decree granting the final accounting."

When the defendant's counsel later remarked that there was a separate decree issued on November 29, 2021, regarding the final accounting "that was not appealed," the plaintiff's counsel abruptly changed course, stating: "I hate to go backwards but I stand corrected. It does appear to me that the complaint did

include [an appeal of] both decrees, both the final account[ing] decree as well as the [November, 2021 decree].” In response, the defendant’s counsel stated: “We’ve proceeded the whole case, Your Honor—this is a claim that’s brand new, not just to this morning but to today. We’ve proceeded this whole time that there’s one single decree being appealed, and that was the [November, 2021] decree denying the two petitions. And I don’t agree with that characterization that [the final accounting] decree was attached to the original complaint.”

The court then reserved judgment on the defendant’s motions in limine and turned its attention to the proposed findings of fact that the parties had filed. At that time, the plaintiff’s counsel stated, with respect to the stipulation in paragraph 28 that “[n]o appeal was taken of the final accounting decree,” that he “may want to change position on that.” In response, the court explained that, although it would not adopt paragraph 28 as a proposed finding of fact, it “may well make that determination” itself. In its memorandum of decision, the court did exactly that and found that “the plaintiff did not appeal” the final accounting decree.

We conclude that the Superior Court’s finding is not clearly erroneous in light of the evidence and pleadings in the whole record. See *MJM Landscaping, Inc.* v. *Lorant*, supra, 268 Conn. 436. In the plaintiff’s original complaint, his September 20, 2023 amended complaint, his June 26, 2023 objection to the defendant’s motion to dismiss, and his April 25, 2024 objection to the defendant’s motion in limine, the plaintiff made clear that this probate appeal concerned only the November, 2021 decree. In addition, the plaintiff entered into a stipulation of facts with the defendant, which was filed with the court on April 26, 2024, in which they averred that “[n]o appeal was taken of the final accounting decree.”

It is axiomatic that "[t]he parties are bound by their pleadings." *American Express Bank, FSB* v. *Rutkowski*, 174 Conn. App. 472, 476 n.5, 166 A.3d 908 (2017). "Connecticut is a fact pleading jurisdiction. . . . Pleadings have an essential purpose in the judicial process." (Citations omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008). "Pleadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise. . . . [The] purpose of pleadings is to frame, present, define, and narrow the issues, and to form the foundation of, and to limit, the proof to be submitted on the trial." (Citations omitted; internal quotation marks omitted.) *Rudder* v. *Mamanasco Lake Park Assn., Inc.*, 93 Conn. App. 759, 768, 890 A.2d 645 (2006). Accordingly, "[f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in [a] pleading dispenses with proof, and is equivalent to proof." (Internal quotation marks omitted.) *Provencher* v. *Enfield*, 284 Conn. 772, 792, 936 A.2d 625 (2007); see also *King* v. *Spencer*, 115 Conn. 201, 204, 161 A. 103 (1932) ("[a] judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it"); *Howat* v. *Passaretti*, 11 Conn. App. 518, 525, 528 A.2d 834 (1987) ("[j]udicial admissions may be expressed in different forms, such as a formal pleading . . . or a written stipulation" (citations omitted)).

There is no indication whatsoever in any of the pleadings that the plaintiff filed with the court from the commencement of his probate appeal in the Superior Court in December, 2021, to the first day of trial on April 30, 2024, that the propriety of the final accounting decree was at issue. To the contrary, the plaintiff steadfastly maintained in those pleadings that this appeal pertained

solely to the propriety of the Probate Court's decision to deny his motion for payment and his petition to surcharge, as articulated in the November, 2021 decree.

"The principle that a plaintiff may rely only [on] what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations [in the] complaint. . . . A complaint must fairly put the defendant on notice of the claims . . . against him. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . Only those issues raised by the [plaintiff] in the latest complaint can be tried . . . ." (Citation omitted; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 621, 99 A.3d 1079 (2014); see also *Lundberg* v. *Kovacs*, 172 Conn. 229, 233, 374 A.2d 201 (1977) ("[f]acts found but not averred cannot be made the basis for a recovery" (internal quotation marks omitted)); *Russell* v. *Russell*, 91 Conn. App. 619, 634, 882 A.2d 98 (Superior Court "is not permitted to decide issues outside of those raised in the pleadings" (internal quotation marks omitted)), cert. denied, 276 Conn. 924, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 925, 888 A.2d 92 (2005). In his original complaint, his September 20, 2023 amended complaint, his June 26, 2023 objection to the defendant's motion to dismiss, his April 25, 2024 objection to the defendant's motion in limine, and the April 26, 2024 stipulation that he entered into with the defendant, the plaintiff averred that this probate appeal pertained only to the propriety of the November, 2021 decree. The court and the defendant were entitled to rely on those affirmations. See, e.g., *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 549, 606 A.2d 684 (1992) (party "had a right, in preparing its case for trial, to rely on the factual allegations contained in [the opposing party's] pleadings"); *Lesser* v. *Altnacraig Convalescent Home, Inc.*, 144 Conn. 488, 491–92, 133 A.2d

908 (1957) ("[i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings").

On appeal, the plaintiff argues that the court's determination that he did not appeal the final accounting decree is clearly erroneous in light of his inclusion of the certificate of mailing page from the final accounting decree as an exhibit to his complaint. Pursuant to § 45a-186 (c), when a party commences a probate appeal, "[a] copy of the order, denial or decree appealed from shall be attached to the complaint." The record plainly indicates that the final judgment decree itself was not attached to either the plaintiff's original complaint or his September 20, 2023 amended complaint. Because he did attach the certificate of mailing page from that decree, the plaintiff asserts, in conclusory fashion, that "enough of the [final accounting decree] was attached . . . such that the [Superior] Court decision should be reversed . . . ." The plaintiff has provided no legal authority or analysis of that assertion, rendering it inadequately briefed. See *Cohen* v. *Rossi*, 346 Conn. 642, 689, 295 A.3d 75 (2023).

Even if we were to conclude that the filing of a certificate of mailing page without the accompanying probate decree suffices for purposes of § 45a-186 (c), it nevertheless remains that the plaintiff raised no allegation in either his original complaint or his September 20, 2023 amended complaint regarding the propriety of the final accounting decree in any respect. Rather, the only issue raised in those pleadings was the propriety of the Probate Court's denial of the plaintiff's motion for payment and his petition to surcharge, as the plaintiff affirmed in both his June 26, 2023 objection to the defendant's motion to dismiss and his April 25, 2024 objection to the defendant's motion in limine. For all of those reasons, we conclude that the Superior Court's determination that the plaintiff did not appeal the final

accounting decree is not clearly erroneous in light of the evidence and pleadings in the record before us.[17]

## III

The plaintiff claims that the Superior Court erroneously found that the final accounting of the successor trustee incorporated expenditures itemized in a prior accounting filed by the defendant one year earlier. We do not agree.

The plaintiff's claim is reviewed pursuant to the clearly erroneous standard. See *Moore* v. *Bryant-Mitchell*, supra, 234 Conn. App. 387–88. In determining whether a finding of fact is clearly erroneous, "every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Slack* v. *Greene*, supra, 294 Conn. 427.

The following undisputed facts are relevant to this claim. On August 16, 2019, the defendant filed the August, 2019 accounting for the period of May 1, 2015, through January 9, 2019. That August, 2019 accounting was admitted into evidence as an exhibit at trial before the Superior Court. Schedule B-2 of that accounting, which specifies various expenses of the trust, includes $407,327.53 in attorney's fees paid to the defendant's counsel from May 22, 2015, to August 31, 2018. The August, 2019 accounting indicates that the trust had

---

[17] To the extent that the plaintiff contends that the trial transcripts contain evidence that he intended to appeal the final accounting decree, he is mistaken. Those transcripts contain no testimony from any witness as to the scope of the pleadings or the issue of whether the final accounting decree had been appealed. The only statements from those transcripts referenced by the plaintiff in his appellate brief are unsworn ones made by his attorney, which do not constitute evidence. See *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 153, 496 A.2d 476 (1985) ("representations of the plaintiffs' counsel are not 'evidence' and certainly not 'proof' "); *Olson* v. *Olson*, 71 Conn. App. 826, 830, 804 A.2d 851 (2002) ("[r]epresentations made by counsel are not evidence in the record upon which we can rely" (internal quotation marks omitted)).

a total of $3,718,146.05 in property on hand, interest received, and other income received. After deducting a total of $730,912.54 in "administrative expenses" specified in Schedule B-2, which included the aforementioned attorney's fees, the August, 2019 accounting concluded that $2,987,233.51 in assets were "remaining as of January 9, 2019 . . . ." In the September, 2019 decree, the Probate Court indicated that, at that time, the August, 2019 accounting would be "held for informational purposes only . . . ."

It is undisputed that the successor trustee filed a final accounting on August 28, 2020. On November 29, 2021, the Probate Court issued the final accounting decree, in which it approved that final accounting.

The successor trustee's August 28, 2020 final accounting was admitted into evidence as an exhibit at trial before the Superior Court. After certifying that copies had been provided to all interested parties, that final accounting specifies certain "charges" of the trust. It begins by referencing the "[a]mount on [h]and as shown in . . . [a]ccount on [f]ile, Schedule A-1." It then identifies that amount as $2,987,233.51—the exact figure set forth in the August, 2019 accounting as the amount on hand as of January 9, 2019. Three pages later, Schedule A-1 of the final accounting similarly specifies a total of $2,987,233.51 on hand as of January 9, 2019.

Those exhibits substantiate the Superior Court's finding that the August, 2019 accounting served as the basis of, and was incorporated into, the final accounting submitted by the successor trustee and approved by the Probate Court. Because the August, 2019 accounting deducted $407,327.53 in legal expenses paid to the defendant's counsel in determining that $2,987,233.51 in assets remained as of January 9, 2019, and the successor trustee adopted that "[a]ccount on [f]ile" in his final

accounting, those expenses necessarily were incorporated into the successor trustee's final accounting. For that reason, the Superior Court found that, "when the Probate Court approved the final account, it approved not only the expenditures and income specifically itemized by the successor trustee, but also the expenditures and income itemized in the August, 2019 accounting . . . ." Indulging every reasonable presumption in favor of the Superior Court's ruling, as our standard of review requires, we conclude that the court's finding was not clearly erroneous.

## IV

The plaintiff also contends that the Superior Court improperly concluded that his petition to surcharge was barred by the statute of limitations contained in § 45a-186 (b).[18] We disagree.

Whether a party's claim is barred by a statute of limitations is a question of law over which our review is plenary. See *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–408, 957 A.2d 836 (2008); *Sean O'Kane A.I.A. Architect, P.C.* v. *Puljic*, 148 Conn. App. 728, 734, 87 A.3d 1124 (2014). Section 45a-186 (b) sets forth the applicable limitation periods for probate appeals and provides in relevant part: "Any person aggrieved by an order, denial or decree of a Probate Court may appeal therefrom to the Superior Court. An appeal from a matter heard under any provision of section 45a-593, 45a-594, 45a-595 or 45a-597, sections 45a-644 to 45a-677, inclusive, sections 45a-690 to 45a-703, inclusive, or section 45a-705a, shall be filed not later than forty-five days after the date on which the Probate Court sent the order, denial or decree.

---

[18] In its memorandum of decision, the Superior Court alternatively concluded that the plaintiff's petition to surcharge was barred by the doctrine of collateral estoppel. Because we conclude that the court properly determined that the petition was time barred, we need not address that issue.

Except as provided in sections 45a-187 and 45a-188, an appeal from an order, denial or decree in any other matter shall be filed on or before the thirtieth day after the date on which the Probate Court sent the order, denial or decree. . . .” The thirty day appeal period of § 45a-186 (b) applies in the present case.

In his petition to surcharge, the plaintiff sought to surcharge the defendant for $344,074.08 in attorney’s fees that were paid to the defendant’s counsel with trust assets. As discussed in part III of this opinion, that expenditure was incorporated into the successor trustee’s final accounting, which the Probate Court approved in the final accounting decree. Because the plaintiff did not appeal the final accounting decree to the Superior Court within thirty days, the court properly concluded that it was time barred pursuant to § 45a-186 (b).[19]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[19] In his appellate brief, the plaintiff also contests the Superior Court’s finding that the defendant’s acquisitions of the trust interests of other beneficiaries were not “other than arm’s length, mutually agreeable financial transactions . . . .” In light of our conclusion that the Superior Court lacked jurisdiction over his motion for payment and that his petition to surcharge is barred by the applicable statute of limitations, we do not consider that claim of factual error.